# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SKY TIPTON, | No. 4:26-CV-00737 |
| Plaintiff, | (Chief Judge Brann) |
| v. | |
| KATHY BRITTAIN, *et al.*, | |
| Defendants. | |

## MEMORANDUM OPINION

### JUNE 30, 2026

Sky Tipton filed the instant *pro se* Section 1983[1] action, alleging

unconstitutional conditions of confinement at the State Correctional Institution,

Frackville (SCI Frackville).  The Court will dismiss Tipton's complaint pursuant to

28 U.S.C. § 1915A(b)(1) for failure to state a claim for relief but will grant him

leave to amend.

## I.   BACKGROUND

When Tipton lodged this *pro se* civil rights lawsuit in March 2026, he was

incarcerated at SCI Frackville.[2]  In June 2026, he was transferred to SCI Benner

Township, where he is currently housed.[3]

---

[1]   42 U.S.C. § 1983.  Section 1983 creates a private cause of action to redress constitutional wrongs committed by state officials.  The statute is not a source of substantive rights; it serves as a mechanism for vindicating rights otherwise protected by federal law.  *See Gonzaga Univ. v. Doe*, 536 U.S. 273, 284-85 (2002).

[2]   Doc. 1 ¶ 3.

[3]   *See* Doc. 5.

In his complaint, Tipton alleges that he was subjected to unconstitutional conditions of confinement at SCI Frackville.  He first contends that his conditions violated the Eighth Amendment because the "night lights" in the "BMU"[4] were illuminated "24/7/365."[5]  He claims that the constant illumination from the night lights affected his sleep and caused him to have migraines,[6] and that he had informed several SCI Frackville officials about the lighting but "nothing was done."[7]  On October 31, 2025, Tipton filed a formal grievance (number 1176566) about the night lights in the BMU, and he was informed that he should put in a sick call for his headaches and that "the lights can't be turned off due to local policy."[8]

Tipton's second allegation is that the heat and ventilation in his cell were "not working."[9]  He does not state when these alleged conditions began or how long they persisted.  He claims that he spoke to Deputy Superintendent Damiter about this issue on one occasion, and Damiter responded that he was able to sympathize because his personal residence lacked heat the previous night and was

---

[4]  It is presumed that the initials "BMU" stand for the Pennsylvania Department of Corrections (DOC) "Behavior Management Unit."  *See Baez v. Davis*, No. 3:24-cv-02070, 2026 WL 184273, at *3 n.2 (M.D. Pa. Jan. 23, 2026) ("The Court takes judicial notice that within the DOC, a Behavior[] Management Unit is 'a secure diversionary unit for mentally ill individuals who . . . require a secure setting due to their demonstrated problematic behavior in less secure environments.'" (quoting COMMW. OF PA. DEP'T OF CORR., Policy Statement 13.8.1, Access to Mental Health Care, § 12.A.1 (available at https://www.pa.gov/content/dam/copapwp-pagov/en/cor/documents/about-us/doc-policies/13.08.01-access-to-mental-health-care.pdf))).
[5]  Doc. 1 ¶ 17.
[6]  *Id.* ¶¶ 20, 24.
[7]  *Id.* ¶ 17-21, 26,
[8]  *Id.* ¶¶ 24-25.
[9]  *Id.* ¶¶ 28-30.

cold as well.[10]  Tipton avers that he included this issue in his December 13, 2025 grievance (number 1183743).[11]

Tipton lastly contends that his housing unit had a "rodent and insect infestation."[12]  He recounts that he included this issue in the December 13, 2025 grievance.[13]  In response, an email was sent to the Facility Safety Manager to have an exterminator spray the block and Tipton's cell.[14]  As promised, on January 9, 2026, an exterminator came to the BMU and sprayed the block and Tipton's cell.[15]  Tipton then claims that he killed a "house centipede" in his cell on January 11, 2026, and saw ants in the mini law library on January 13, 2026.[16]  He alleges that Unit Manager Schaeffer "poked her head in [the mini law library] and I showed [the ants] to her and she made note of it on her clip board and notified the Facility Safety Manager again for an exterminator to come back down."[17]

Tipton then avers that on January 29, 2026, another inmate caught a mouse and a corrections officer killed it by stepping on it.[18]  The following day, the exterminator returned to the BMU and once again sprayed the block and Tipton's

---

[10]  *Id.* ¶ 28.
[11]  *Id.* ¶ 30.
[12]  *Id.* ¶¶ 30-44.
[13]  *Id.* ¶ 30.
[14]  *Id.* ¶ 31.
[15]  *Id.* ¶ 33.
[16]  *Id.* ¶¶ 34, 36.
[17]  *Id.* ¶ 37.
[18]  *Id.* ¶ 38.

cell.[19]  Over the next few days, two other inmates caught and killed a total of three mice in their cells.[20]  On February 13, 2026, the exterminator returned for a third time and sprayed the block and all the cells.[21]

Tipton sues twelve defendants: Superintendent Kathy Brittain, Lieutenant C. Gregory, Unit Manager Courtney Schaeffer, Deputy Superintendent Peter Damiter, Deputy Superintendent Reese, Major Reber, Corrections Officer Shellhamer, Corrections Officer McClintick, Corrections Officer D. Hefflefinger, PSSC Kathryn Michelle Hansell, PSSC Gwenievere Alycia Birster-Mallory, and PSSC Diane M. Chrisante.[22]  He seeks a declaration that his constitutional rights were violated, $200,000 in monetary damages, and the costs of litigation.[23]

## II.    STANDARDS OF REVIEW

Courts are statutorily obligated to review, "as soon as practicable," *pro se* prisoner complaints targeting governmental entities, officers, or employees.[24]  One basis for dismissal at the screening stage is if the complaint "fails to state a claim upon which relief may be granted[.]"[25]  This language closely tracks Federal Rule of Civil Procedure 12(b)(6).  Accordingly, courts apply the same standard to

---

[19]    *Id.* ¶ 40.
[20]    *Id.* ¶¶ 41-43.
[21]    *Id.* ¶ 44.
[22]    *Id.* ¶¶ 4-15.
[23]    *Id.* ¶¶ 58, 59, 61.
[24]    *See* 28 U.S.C. § 1915A(a).
[25]    *Id.* § 1915A(b)(1).

screening a *pro se* prisoner complaint for sufficiency under Section 1915A(b)(1) as they utilize when resolving a motion to dismiss under Rule 12(b)(6).[26]

In deciding a Rule 12(b)(6) motion to dismiss, courts should not inquire "whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims."[27]  The court must accept as true the factual allegations in the complaint and draw all reasonable inferences from them in the light most favorable to the plaintiff.[28]  In addition to the facts alleged on the face of the complaint, the court may also consider "exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents" attached to a defendant's motion to dismiss if the plaintiff's claims are based upon these documents.[29]

When the sufficiency of a complaint is challenged, the court must conduct a three-step inquiry.[30]  At step one, the court must "tak[e] note of the elements [the] plaintiff must plead to state a claim."[31]  Second, the court should distinguish well-pleaded factual allegations—which must be taken as true—from mere legal

---

[26]  *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 109-10 & n.11 (3d Cir. 2002); *O'Brien v. U.S. Fed. Gov't*, 763 F. App'x 157, 159 & n.5 (3d Cir. 2019) (per curiam) (nonprecedential); *cf. Allah v. Seiverling*, 229 F.3d 220, 223 (3d Cir. 2000).

[27]  *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974); *see Nami v. Fauver*, 82 F.3d 63, 66 (3d Cir. 1996).

[28]  *Phillips v. County of Allegheny*, 515 F.3d 224, 229 (3d Cir. 2008).

[29]  *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010) (citing *Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993)).

[30]  *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (internal citations and quotation marks omitted) (footnote omitted).

[31]  *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009) (alterations in original)).

conclusions, which "are not entitled to the assumption of truth" and may be disregarded.[32]  Finally, the court must review the presumed-truthful allegations "and then determine whether they plausibly give rise to an entitlement to relief."[33] Deciding plausibility is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense."[34]

Because Tipton proceeds *pro se*, his pleadings are to be liberally construed and his complaint, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers[.]"[35]  This is particularly true when the *pro se* litigant, like Tipton, is incarcerated.[36]

## III.    DISCUSSION

Before addressing the sufficiency of Tipton's complaint, the Court must identify the claimed constitutional violation.[37]  Although Tipton states that he is asserting four different Eighth Amendment claims ("failed to protect," "harsh conditions of confinement," "unwanton [sic] infliction of pain," and "deliberate indifference"),[38] his allegations boil down to a single Eighth Amendment claim:

---

[32]  *Id.* (quoting *Iqbal*, 556 U.S. at 679).
[33]  *Id.* (quoting *Iqbal*, 556 U.S. at 679).
[34]  *Iqbal*, 556 U.S. at 681.
[35]  *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (citations omitted).
[36]  *Dooley v. Wetzel*, 957 F.3d 366, 374 (3d Cir. 2020) (citation omitted).
[37]  *Albright v. Oliver*, 510 U.S. 266, 271 (1994) ("The first step in any [Section 1983] claim is to identify the specific constitutional right allegedly infringed."); *Graham v. Connor*, 490 U.S. 386, 394 (1989) (explaining that analysis of a Section 1983 claim requires "identifying the specific constitutional right allegedly infringed by the challenged" conduct).
[38]  *See* Doc. 1 ¶¶ 51-54, 56.

unconstitutional conditions of confinement at SCI Frackville.  He also asserts state-law tort claims of intentional infliction of emotional distress (IIED) and negligence.[39]  Upon review of Tipton's complaint, as required by Section 1915A(a), he fails to state a claim upon which relief may be granted.  The Court will address his pleading deficiencies in turn.

### A.      Personal Involvement

It is well established that, in Section 1983 actions, liability cannot be "predicated solely on the operation of *respondeat superior*."[40]  Rather, a Section 1983 plaintiff must aver facts that demonstrate "the defendants' personal involvement in the alleged misconduct."[41]  Personal involvement can include direct wrongful conduct by a defendant, but it can also be demonstrated through allegations of "personal direction" or of "actual knowledge and acquiescence"; however, such averments must be made with particularity.[42]  Furthermore, it is equally settled that involvement in the post-incident grievance process alone does not give rise to Section 1983 liability.[43]

---

[39]   *See id.* ¶¶ 50, 55.

[40]   *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988) (citations omitted); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) (affirming same principle in *Bivens* context).

[41]   *Dooley*, 957 F.3d at 374 (citing *Rode*, 845 F.2d at 1207).

[42]   *Id.* (quoting *Rode*, 845 F.2d at 1207).

[43]   *See id.* (affirming dismissal of claims against prison officials for lack of personal involvement when officials' "only involvement" was "their review and denial of [plaintiff]'s grievance"); *Lewis v. Wetzel*, 153 F. Supp. 3d 678, 696-97 (M.D. Pa. 2015) (collecting cases); *Brooks v. Beard*, 167 F. App'x 923, 925 (3d Cir. 2006) (nonprecedential); *Alexander v. Gennarini*, 144 F. App'x 924, 925 (3d Cir. 2005) (nonprecedential) (explaining that prisoner's claims against

Tipton's first pleading deficiency is his failure to allege personal involvement for numerous Defendants.  Although he names twelve Defendants in his lawsuit, his allegations only specifically reference conduct by eight of those Defendants: Unit Manager Schaeffer, Deputy Superintendent Damiter, Deputy Superintendent Reese, Major Reber, CO Shellhamer, CO McClintick, PSSC Hansell, and PSSC Birster-Mallory.  There is no involvement whatsoever alleged for Superintendent Brittain, Lieutenant Gregory, CO Hefflefinger, or PSSC Chrisante.  These four Defendants are merely named in the defendant-identification section of the complaint.

Moreover, even as to Unit Manager Schaeffer, CO Shellhamer, and CO McClintick, Tipton does not include any allegations of *wrongdoing* that could establish personal involvement in a purported constitutional violation.  As to Unit Manager Schaeffer, Tipton's single allegation is that she "poked her head in" the mini law library, was made aware of the presence of ants, and then promptly notified the Facility Safety Manager to have the exterminator return to the housing block.[44]  As to CO Shellhamer, Tipton alleges that Schellhamer responded to an inmate's call about a mouse being trapped under a bucket and then proceeded to

---

certain defendants were "properly dismissed" because the allegations against them "merely assert their involvement in the post-incident grievance process").

[44]   Doc. 1 ¶ 37.

kill the mouse.[45]  McClintick was simply informed about the mouse being caught.[46] None of these allegations reflect personal involvement in constitutional misconduct.

To plausibly state a Section 1983 claim, Tipton must specify each Defendant's personal involvement in the alleged constitutional violation.  That is, he must explain what action (or inaction) by each Defendant violated his constitutional rights.  He has not done so for more than half the defendants. Accordingly, the Court must dismiss the Section 1983 claims against Superintendent Brittain, Lieutenant Gregory, Unit Manager Schaeffer, CO Hefflefinger, CO Shellhamer, CO McClintick, and PSSC Chrisante pursuant to 28 U.S.C. § 1915A(b)(1) for lack of personal involvement.

### B.     Eighth Amendment Conditions of Confinement

"[T]he Constitution does not mandate comfortable prisons, and prisons . . . which house persons convicted of serious crimes[] cannot be free of discomfort."[47] Nevertheless, the state cannot subject an inmate to cruel and unusual punishment or "inhumane treatment," such as deprivation of "identifiable human need[s]" like "food, clothing, shelter, medical care, and reasonable safety[.]"[48]

---

[45]  *Id.* ¶ 38.

[46]  *Id.*

[47]  *Thomas v. Tice*, 948 F.3d 133, 139 (3d Cir. 2020) (second alteration in original) (quoting *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981)).

[48]  *See Helling v. McKinney*, 509 U.S. 25, 32 (1993) (citation omitted).

To state an Eighth Amendment conditions-of-confinement claim, a prisoner-plaintiff must plausibly allege both objective and subjective elements.[49] Objectively, the inmate must allege that "the prison official deprived the prisoner of the minimal civilized measure of life's necessities," often referred to as a "sufficiently serious" deprivation.[50] Subjectively, the prisoner must plead that "the prison official acted with deliberate indifference" to the prisoner's "health or safety."[51] Deliberate indifference means that the defendant "acted or failed to act despite having knowledge that her actions or inaction, as the case may be, would subject the inmate to a substantial risk of serious harm."[52] Deliberate indifference is a high bar and requires a plaintiff to show that the defendant "recklessly disregard[ed] a substantial risk of serious harm."[53]

Tipton's Eighth Amendment claim fails because—as his complaint currently stands—he has not plausibly alleged a sufficiently serious deprivation of life's necessities. Tipton's primary complaint is that he was subjected to a "night light" that was constantly illuminated while he was housed in the BMU at SCI Frackville. He claims that the night light disrupted his sleep and gave him migraine headaches. Yet Tipton does not sufficiently elaborate on this allegation. Notably, he does not

---

[49]  *See Chavarriaga v. N.J. Dep't of Corr.*, 806 F.3d 210, 226 (3d Cir. 2015).

[50]  *Id.* (citing *Farmer v. Brennan*, 511 U.S. 825, 843 (1994); *Wilson*, 501 U.S. at 297).

[51]  *Id.* (citing *Farmer*, 511 U.S. at 834).

[52]  *Id.* at 227 (citing *Farmer*, 511 U.S. at 842).

[53]  *Palakovic v. Wetzel*, 854 F.3d 209, 227 (3d Cir. 2017) (citation omitted).

explain how weak or strong the illumination from the night light was, a critical

factor regarding security illumination in prison settings.[54]  He also fails to allege

where the night light or night lights were located (*e.g.*, was the light fixture inside

his cell or in the hallway?), or how long he was housed in the BMU under this

constant lighting condition.  Without such critical facts, it is impossible to

determine whether the lighting conditions Tipton alleges rise to the level of a

sufficiently serious deprivation.[55]

The same reasoning applies to Tipton's claim that his cell lacked heat and

ventilation.  Certainly, lack of heat during winter months could implicate a

constitutional violation.[56]  Yet Tipton does not aver how long this alleged

condition persisted, a crucial factor for any conditions-of-confinement claim.

Indeed, the duration of the alleged constitutional deprivation is often one of the

most critical factors in the conditions-of-confinement analysis.[57]  One or two nights

---

[54]  *Compare Mammana v. Fed. Bureau of Prisons*, 934 F.3d 368, 374 (3d Cir. 2019) (noting that "bright, constant illumination that causes 'grave sleeping problems and other mental and psychological problems'" can implicate an Eighth Amendment deprivation), *with Stewart v. Beard*, 417 F. App'x 117, 120 & n.1 (3d Cir. 2011) (nonprecedential) (holding that use of 9-watt, low intensity nighttime security light in Restricted Housing Unit (RHU) did not rise to the level of a constitutional deprivation), *and Brown v. Martinez*, No. 3:03-cv-2392, 2007 WL 2225842, at *8 (M.D. Pa. July 31, 2007) (Vanaskie, J.) (holding that 15-watt security night light in a prisoner's cell was necessary for nighttime institutional security and thus did not amount to a constitutional violation), *and Spencer v. Wetzel*, No. 3:12-cv-0616, 2014 WL 1056424, at *5 (M.D. Pa. Mar. 17, 2014) (finding that 9-watt night light with opaque cover used in RHU for security concerns did not violate Eighth Amendment).

[55]  *See supra*, note 54.

[56]  *See Mammana*, 934 F.3d at 374.

[57]  *See Thomas v. Tice*, 948 F.3d 133, 139 (3d Cir. 2020) (stressing that "*duration*" of confinement in a dry cell was crucial consideration in Eighth Amendment conditions-of-confinement claim).

without heat may not implicate an Eighth Amendment infringement,[58] but numerous nights without heat and adequate protective bedding and clothing could violate the constitution.[59]

Last, the Court considers Tipton's allegations regarding the presence of mice and insects on his housing unit.  It is highly unlikely that the presence of several mice, a house centipede in Tipton's cell, and ants in the mini law library rise to the level of an Eighth Amendment violation.  These allegations are reminiscent of run-of-the-mill pest-control issues that most of the general public experiences.

Even assuming they did meet the first objective prong of the conditions-of-confinement analysis, these claims fall flat at the second, subjective prong.  That is, assuming the alleged presence of mice and insects qualifies as a sufficiently serious deprivation (alone or in combination with the other conditions alleged), Tipton's allegations plainly demonstrate that prison officials were anything but indifferent to the inmates' concerns.  To wit: after Tipton's complaints, the Facility Safety Manager was contacted and an exterminator was sent to the BMU on no less than *three* separate occasions over a short span of time.  One could hope for no better response in private rental housing.  It is therefore clear from Tipton's

---

[58] *See, e.g.*, *Hoover v. Watson*, 886 F. Supp. 410, 416 (D. Del. 1995) (holding that allegations that prisoners "on several occasions . . . spent a day or night without heat and hot water" and dealt with, *inter alia*, "broken bathroom facilities, ventilation and odor problems" did not rise to the level of an Eighth Amendment violation), *aff'd*, 74 F.3d 1226 (3d Cir. 1995) (table).

[59] *See Mammana*, 934 F.3d at 373-74.

complaint that no Defendant was deliberately indifferent to this particular condition of confinement.

In sum, Tipton's allegations fail to state a plausible conditions-of-confinement claim.  However, it is conceivable that Tipton could cure the deficiencies outlined above by pleading additional facts that better describe his conditions of confinement, their severity, and their duration.  Thus, leave to amend will be granted.

## C.    Official Capacity Claims

Tipton sues all Defendants in their individual and official capacities. However, any official capacity claim seeking monetary damages from state officials is barred by Eleventh Amendment sovereign immunity.  Additionally, the official capacity claims fail because Tipton does not seek any prospective equitable relief and there is no underlying constitutional violation alleged.

The Eleventh Amendment to the United States Constitution prevents federal courts from entertaining lawsuits—by United States citizens or citizens of foreign states—brought against a state.[60]  This immunity from private suit extends to state agencies as well as state officials acting in their official capacity, because such lawsuits are essentially civil actions "against the State itself."[61]  States may waive

---

[60]    U.S. CONST. amend. XI; *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 267-68 (1997); *Hans v. Louisiana*, 134 U.S. 1, 10 (1890).

[61]    *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989).

this immunity if they choose, but Pennsylvania has explicitly not waived its

immunity with respect to claims brought under Section 1983.[62]  There are two

exceptions to the Eleventh Amendment's bar to private suits against nonconsenting

states: (1) "Congress may abrogate a state's immunity" and (2) "parties may sue

state officers for *prospective* injunctive and declaratory relief."[63]

Tipton seeks $200,000 in damages and the costs of his lawsuit.  To the

extent these monetary damages are sought against state-actor Defendants in their

official capacities, such claims are barred by Eleventh Amendment sovereign

immunity.  Furthermore, Tipton does not seek prospective declaratory or injunctive

relief; his single claim for a declaration that his rights were violated is retrospective

in nature.  Finally, because Tipton has failed to allege an underlying constitutional

violation, his official capacity claims fail, too.

### D.     State-Law Tort Claims

Tipton asserts state-law tort claims of IIED and negligence.  However, these

claims are related to his Section 1983 conditions-of-confinement claim that is

being dismissed.  The Court thus declines to exercise supplemental jurisdiction

over the pendent state-law claims.[64]

---

[62]  *See* 42 PA. CONS. STAT. § 8521(b); *Downey v. Pa. Dep't of Corr.*, 968 F.3d 299, 310 (3d Cir. 2020); *Betts v. New Castle Youth Dev. Ctr.*, 621 F.3d 249, 254 & n.5 (3d Cir. 2010) (citing 42 PA. CONS. STAT. § 8521(b)).

[63]  *Wheeling & Lake Erie Ry. Co. v. Pub. Util. Comm'n of Pa.*, 141 F.3d 88, 91 (3d Cir. 1998) (emphasis added) (citing, *inter alia*, *Ex parte Young*, 209 U.S. 123 (1908)).

[64]  *See* 28 U.S.C. § 1367(c)(3); *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966) (explaining general rule that if all federal claims are dismissed before trial, courts should

14

### E.    Leave to Amend

Generally, "plaintiffs who file complaints subject to dismissal under [the Prison Litigation Reform Act of 1995] should receive leave to amend unless amendment would be inequitable or futile."[65]  The Court will grant Tipton leave to amend in the event that he can allege—under the parameters set forth in Federal Rule of Civil Procedure 11(b)—additional facts that could plausibly state an Eighth Amendment conditions-of-confinement claim.

If Tipton chooses to file an amended complaint in conformity with this Memorandum, it should be a stand-alone document, complete in itself and without reference to any previous pleadings.  The amended complaint should set forth his claim(s) in short, concise, and plain statements, and in sequentially numbered paragraphs (much like his initial complaint).  Tipton must leave one-inch margins on all four sides of his pleading.[66]  He must also name proper defendants and specify the offending actions or omissions by each defendant.  This step is particularly critical for Tipton, as his initial complaint is devoid of allegations that demonstrate many Defendants' personal involvement in the purportedly

---

likewise dismiss pendent state-law claims); *Shaffer v. Bd. of Sch. Dirs. Albert Gallatin Area Sch. Dist.*, 730 F.2d 910, 912 (3d Cir. 1984) (explaining that, absent "extraordinary circumstances," supplemental jurisdiction over state-law claims should be declined "where the federal claims are no longer viable" (citation omitted)).

[65]    *Grayson*, 293 F.3d at 114.

[66]    *See* LOCAL RULE OF COURT 5.1.

15

unconstitutional conduct.  He must also sign the amended complaint and indicate the nature of the relief sought.

If Tipton does not timely file an amended complaint, dismissal of his Section 1983 claims without prejudice will automatically convert to dismissal with prejudice and the Court will close this case.

## IV.    CONCLUSION

Based on the foregoing, the Court will dismiss without prejudice Tipton's Section 1983 claims pursuant to 28 U.S.C. § 1915A(b)(1) because he fails to state a claim upon which relief may be granted.  The Court will decline to exercise supplemental jurisdiction over Tipton's remaining state-law claims.  Leave to amend will be granted.  An appropriate Order follows.

BY THE COURT:


*s/ Matthew W. Brann*
Matthew W. Brann
Chief United States District Judge

16